**THOMSON PRINTING MACHINERY CO., Plaintiff-Appellant,**

v.

**B.F. GOODRICH CO., Defendant-Appellee.**

No. 82–3013.

United States Court of Appeals, Seventh Circuit.

Argued June 6, 1983.

Decided Aug. 12, 1983.

Richard H. Marcus, Berks, Berks & Marcus, Ltd., Chicago, Ill., for plaintiff-appellant.

H. Russell Barefield, Haskell & Perrin, Chicago, Ill., for defendant-appellee.

Before WOOD and CUDAHY, Circuit Judges, and GRANT, Senior District Judge.[*]

CUDAHY, Circuit Judge.

Appellant Thomson Printing Company ("Thomson Printing") won a jury verdict in its suit for breach of contract against appellee B.F. Goodrich Company ("Goodrich"). The district court concluded, however, that as a matter of law the contract could not be enforced against Goodrich because it was an oral contract, the Statute of Frauds applied and the Statute was not satisfied. Because we conclude that the contract was enforceable on the basis of the "merchants" exception to the Statute of Frauds, we reverse.

*Introduction*

Thomson Printing buys and sells used printing machinery. On Tuesday, April 10, 1979, the president of Thomson Printing, James Thomson, went to Goodrich's surplus machinery department in Akron, Ohio to look at some used printing machinery which was for sale. James Thomson discussed the sale terms, including a price of $9,000, with Goodrich's surplus equipment manager, Ingram Meyers. Four days later, on Saturday, April 14, 1979, James Thomson sent to Goodrich in Akron a purchase order for the equipment and a check for $1,000 in part payment.

Thomson Printing sued Goodrich when Goodrich refused to perform. Goodrich asserted by way of defense that no contract had been formed and that in any event the alleged oral contract was unenforceable due to the Statute of Frauds. Thomson Print-

---

[*] The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

ing argued that a contract had been made and that the "merchants" and "partial performance" exceptions to the Statute of Frauds were applicable and satisfied. The jury found for Thomson Printing, but the district court entered judgment for Goodrich on the grounds that the Statute of Frauds barred enforcement of the contract in Thomson's favor.

## Historical Background

In 1671, in Old Marston, Oxfordshire, England, defendant Egbert was sued by plaintiff John over an alleged oral promise by Egbert to sell to John a fighting cock named Fiste. John's friend, Harold, claimed he overheard the "deal" and by that dubious means John won, though in fact there apparently was no deal. In 1676 courts did not allow parties to a lawsuit to testify so Egbert could not testify to rebut Harold's story. Compounding the problem was the fact that courts then could not throw out jury verdicts manifestly contrary to the evidence. So, in response to the plight of the Egberts of this world and to the recurring mischief of the Johns, as well as to combat possible "fraude and perjurie" by the Harolds, Parliament passed in 1677 a "statute of frauds" which required that certain contracts for the sale of goods be in writing to be enforceable.[1]

## The "Merchants" Exception

A modern exception[2] to the usual writing requirement is the "merchants" exception of the Uniform Commercial Code, OHIO REV. CODE ANN. § 1302.04(B) (Page 1979) (U.C.C. § 2–201(2)), which provides:

> Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the [writing requirement] against such party unless written notice of objection to its contents is given within 10 days after it is received.

We must emphasize that the only effect of this exception is to take away from a merchant who receives a writing in confirmation of a contract the Statute of Frauds defense if the merchant does not object. The sender must still persuade the trier of fact that a contract was in fact made orally, to which the written confirmation applies.

In the instant case, James Thomson sent a "writing in confirmation" to Goodrich four days after his meeting with Ingram Meyers, a Goodrich employee and agent. The purchase order contained Thomson Printing's name, address, telephone number and certain information about the machinery purchase.[3] The check James Thomson

---

1. This historical background is based on J. White & R. Summers, HANDBOOK OF THE LAW UNDER THE UNIFORM COMMERCIAL CODE 50 (2d ed. 1980) (footnotes omitted). *See generally* E.A. Farnsworth, CONTRACTS ch. 6 (1982).

2. An exception of longstanding, which was also argued here, is the "partial performance" exception. We express no opinion on the application of this exception.

3. Complete Erection Service    Miohle Factory Trained Erectors    Sales and Service    N⁰ 8756

## THOMSON PRINTING MACHINERY CO.

### MAINTENANCE • REPAIRING • REBUILDING

**1936 to 1940 Augusta Boulevard • Chicago, Illinois 60622 • Phone 227-8600**

BF GOODRICH COMPANY
500 S. MAIN STREET
AKRON, OHIO 44318

Date 4-14-79

Order No.

sent to Goodrich with the purchase order also had on it Thomson Printing's name and address, and the check carried notations that connected the check with the purchase order.[4]

Goodrich argues, however, that Thomson's writing in confirmation cannot qualify for the 2–201(2) exception because it was not received by anyone at Goodrich who had reason to know its contents.[5] Goodrich claims that Thomson erred in not specifically designating on the envelope, check or purchase order that the items were intended for Ingram Meyers or the surplus equipment department. Consequently, Goodrich contends, it was unable to "find a home" for the check [6] and purchase order despite attempts to do so, in accordance with its regular procedures, by sending copies of the documents to several of its various divisions. Ingram Meyers testified that he never learned of the purchase order until weeks later when James Thomson called to arrange for removal of the machines. By then, however, the machines had long been sold to someone else.

We think Goodrich misreads the requirements of 2–201(2). First, the literal requirements of 2–201(2), as they apply here, are that a writing "is received" and that Goodrich "has reason to know its contents." There is no dispute that the purchase order and check were received by Goodrich, and there is at least no specific or express requirement that the "receipt" referred to in 2–201(2) be by any Goodrich agent in particular.

> These issues are not resolved by [2–201(2)], but it is probably a reasonable projection that a delivery at either the recipient's principal place of business, a place of business from which negotiations were conducted, or to which the sender may have transmitted previous communications, will be an adequate receipt.

3 R. Duesenberg & L. King, BENDER'S UCC SERVICE § 2–204[2] at 2–70 (1982).

As for the "reason to know its contents" requirement, this element "is best understood to mean that the confirmation was an instrument which should have been anticipated and therefore should have received the attention of appropriate parties." *Perdue Farms, Inc. v. Motts, Inc.*, 459 F.Supp. 7, 20 (N.D.Miss.1978) (quoting from BEND-

---

PURCHASE ORDER

1   # 70 MIEHLE C&C WITH BERRY LIFT

1   # 3/0 MIEHLE TWO COLOR PRINTING PRESS

1       STAUDE MASTER GLUER & ASSORTED PARTS

PACKAGE PRICE                                    $ 9000.00

                                    DEPOSIT      $ 1000.00

                        BALANCE UPON REMOVAL     $ 8000.00

CERTIFICATE OF INSURANCE BEING MAILED
BY CRITCHELL–MILLER AGENCY

---

4.  The notations in the upper left hand corner of the check were "1 70 C & C, 1 3/0 T.C and 1 STAUDE MASTER GLUER." *See* PX 1. Compare these notations with the Purchase Order the check accompanied, *supra,* note 3.

5.  The district court found that both parties were merchants for the purpose of 2–201(2). We agree. "For purposes of [2–201(2)] almost every person in business would, therefore, be deemed to be a 'merchant' ... since the practices involved in the transaction are non-specialized business practices such as answering mail." U.C.C. § 2–104, Comment 2.

6.  The check itself was deposited pending clarification in a Goodrich "liability" account.

ER'S UCC SERVICE, *supra,* § 2–204[2] at 2–69). "The receipt of a spurious document would not burden the recipient with a risk of losing the [Statute of Frauds] defense . . . ." *Id.* In the case before us there is no doubt that the confirmatory writings were based on actual negotiations (although the legal effect of the negotiations was disputed), and therefore the documents were not "spurious" but could have been anticipated and appropriately handled.

Even if we go beyond the literal requirements of 2–201(2) and read into the "receipt" requirement the "receipt of notice" rule of 1–201(27), we still think Thomson Printing satisfied the "merchants" exception. Section 1–201, the definitional section of the U.C.C., provides that notice received by an organization

> is effective for a particular transaction . . . from the time when it would have been brought to [the attention of the individual conducting that transaction] if the organization had executed *due diligence.*

U.C.C. § 1–201(27) (emphasis supplied). The Official Comment states:

> reason to know, knowledge, or a notification, although "received" for instance by a clerk in Department A of an organization, is effective for a transaction conducted in Department B only from the time when it was *or should have been* communicated to the individual conducting that transaction.

U.C.C. § 1–201(27), Official Comment (emphasis supplied).

Thus, the question comes down to whether Goodrich's mailroom, given the information it had, should have notified the surplus equipment manager, Ingram Meyers, of Thomson's confirmatory writing. At whatever point Meyers should have been so notified, then at that point Thomson's writing was effective even though Meyers did not see it. *See* 2 A. Squillante & J. Fonseca, WILLISTON ON SALES § 14–8 at 284 (4th ed. 1974) ("the time of receipt will be measured as if the organization involved had used due diligence in getting the document to the appropriate person").

■ The definitional section of the U.C.C. also sets the general standard for what mailrooms "should do":

> An organization exercises due diligence if it maintains reasonable routines for communicating significant information to the person conducting the transaction and there is reasonable compliance with the routines.

U.C.C. § 1–201(27). One cannot say that Goodrich's mailroom procedures were reasonable as a matter of law: if Goodrich had exercised due diligence in handling Thomson Printing's purchase order and check, these items would have reasonably promptly come to Ingram Meyers' attention. First, the purchase order on its face should have alerted the mailroom that the documents referred to a purchase of used printing equipment. Since Goodrich had only one surplus machinery department, the documents' "home" should not have been difficult to find. Second, even if the mailroom would have had difficulty in immediately identifying the kind of transaction involved, the purchase order had Thomson Printing's phone number printed on it and we think a "reasonable routine" in these particular circumstances would have involved at some point in the process a simple phone call to Thomson Printing. Thus, we think Goodrich's mailroom mishandled the confirmatory writings. This failure should not permit Goodrich to escape liability by pleading nonreceipt. *See* WILLISTON ON SALES, *supra,* § 14–8 at 284–85.

We note that the jury verdict for Thomson Printing indicates that the jury found as a fact that the contract had in fact been made and that the Statute of Frauds had been satisfied. Also, Goodrich acknowledges those facts about the handling of the purchase order which we regard as determinative of the "merchants" exception question. We think that there is ample evidence to support the jury findings both of the existence of the contract and of the satisfaction of the Statute.

■ The district court, in holding as a matter of law that the circumstances failed

to satisfy the Statute of Frauds, was impressed by James Thomson's dereliction in failing to specifically direct the purchase order and check to the attention of Ingram Meyers or the surplus equipment department. We agree that Thomson erred in this respect, but, for the reasons we have suggested, Goodrich was at least equally derelict in failing to find a "home" for the well-identified documents. Goodrich argues that in the "vast majority" of cases it can identify checks within a week without contacting an outside party; in the instant case, therefore, if Goodrich correctly states its experience under its procedures, it should presumably have checked with Thomson Printing promptly after the time it normally identified checks by other means—in this case, by its own calculation, a week at most. Under the particular circumstances of this case, we therefore think it inappropriate to set aside a jury verdict on Statute of Frauds grounds.

The district court's order granting judgment for Goodrich is reversed and the cause is remanded for further proceedings consistent with this opinion.

REVERSED and REMANDED.