# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 01-2859/2863

| | |
|---|---|
| Top of Iowa Cooperative, an Iowa cooperative, | * <br> * <br> * |
| Cross-Appellant/Appellee, | * |
| | * Appeals from the United States |
| v. | * District Court for the |
| | * Northern District of Iowa |
| Virgil E. Schewe, | * <br> * |
| Appellant/Cross-Appellee. | * |

Submitted:  March 14, 2002
Filed:   March 24, 2003

Before LOKEN and JOHN R. GIBSON, Circuit Judges, and GOLDBERG,[1] Judge.

GOLDBERG, Judge.

Appellant Virgil E. Schewe ("Schewe") appeals the district court's[2] entry of judgment as a matter of law against his claims that certain hedge-to-arrive ("HTA") contracts were cash forward contracts excluded from the regulations of

---

[1] The Honorable Richard W. Goldberg, Judge of the United States Court of International Trade, sitting by designation.

[2] The Honorable Mark W. Bennett, Chief Judge, United States District Court for the Northern District of Iowa.

the Commodity Exchange Act and not illegal futures contracts. Schewe also appeals the district court's denial of Schewe's post-trial motions to alter or amend the judgment and for judgment as a matter of law, based on the jury's verdict that Top of Iowa Cooperative ("Top of Iowa") breached its fiduciary duty to Schewe; and Schewe appeals the district court's denial of his motion for a new trial on Top of Iowa's successful breach-of-contract claim. Top of Iowa cross-appeals the district court's denial of Top of Iowa's motion for judgment as a matter of law on Schewe's breach of fiduciary duty counterclaim.

## I. **Statement of Facts**

Schewe operates a 500-acre farm in Freeborn County, Minnesota. Between March 13 and June 28 of 1995, Schewe entered into the five subject HTAs with Top of Iowa, a cooperative in Iowa. The HTAs called for Schewe to deliver 30,000 bushels of corn to Top of Iowa on or before December of 1995. The price of the corn was established at the time of contract (at the Chicago Board of Trade ("CBOT") open market futures contract price for December of 1995, minus the "basis"). The "basis" is Top of Iowa's costs plus profit, and would not be set until Schewe elected to set the basis.

Top of Iowa sold a futures contract on the CBOT each time it entered into an HTA with Schewe. This protected Top of Iowa from changes in the open market cash price[3] of corn at the HTA delivery date. The price of corn in a futures contract changes with the daily open market price. If the open market price of corn goes up, Top of Iowa must pay the margin amount[4] on its futures contract to its broker on the CBOT. Top of Iowa would recover the margin amount when

---

[3] The cash price is the price of grain sold on the public open market today.

[4] The margin amount is the difference between the current open market price and the original futures contract price.

2

Schewe delivered the corn on the HTA and Top of Iowa sold that corn at the higher open market price. When corn prices rose throughout 1995, Top of Iowa was required to pay margin money to maintain its futures contracts on the CBOT.[5]

Schewe attempted delivery of the corn under the HTAs to Top of Iowa in the fall of 1995; however, the elevator lacked space and the lengthy wait in line to deliver forestalled actual delivery of the grain. The delivery date for Schewe's corn under the HTAs was rolled on September 26, 1995, to May of 1996. As a result of rolling the CBOT positions to May of 1996, Schewe gained 9 ½¢ per bushel on his HTA contracts' prices. That same day, the CBOT positions were rolled by buying back the December of 1995 position and selling a May of 1996 short position. Between December 4, 1995, and February 22, 1996, Schewe delivered 20,000 bushels of corn to Top of Iowa on a cash basis, rather than delivering pursuant to the subject HTAs. As of February 22, 1996, Schewe was short 30,000 bushels of grain for the May of 1996 short position, and had only 10,000 bushels of grain remaining to deliver.

On April 10, 1996, Top of Iowa notified Schewe that he was responsible for reimbursing Top of Iowa for margin calls on the CBOT positions. Schewe responded to Top of Iowa the following day, and the parties agreed to resolve the dispute in court.

On April 16, 1996, the HTAs were rolled from May of 1996 to July of 1996. This would have required Schewe to deliver 30,000 bushels of corn in July. That same day the CBOT positions were rolled by purchasing back the May of 1996 positions and selling a July of 1996 short position. On May 31, 1996, Schewe

---

[5] In a futures contract, the parties agree to pay the price of corn on the day when the contracts expire, not the price of corn on the day the contracts are made. Therefore, as the price of corn increases, the futures contracts' price increases.

wrote a letter to Top of Iowa canceling the subject HTA contracts; that same day Top of Iowa bought back the July of 1996 CBOT short position. Because no corn was delivered on the HTAs, Top of Iowa was not able to recover the margin money it had paid to its broker on the CBOT.

## II. Statement of the Case

Top of Iowa filed suit in Iowa District Court for Winnebago County on August 12, 1996, against Schewe, claiming Schewe had repudiated the subject HTAs, and claiming damages corresponding to the amount Top of Iowa paid in margin calls on short positions on the CBOT. Schewe removed this action to Federal Court based upon 28 U.S.C. § 1332, and filed his answer and counterclaim, and affirmative defense of illegal contract. Schewe's counterclaims were summarized by the district court as follows: "(1) that the HTAs were 'securities' within the meaning of the [Security Exchange Act] and that they were not offered, engaged in, or sold in compliance with that Act; (2) that the HTAs are illegal off-exchange futures contracts in violation of the Commodity Exchange Act ("CEA") and hence are unenforceable; (3) that Top of Iowa has violated the Racketeer Influenced and Corrupt Organizations Act (RICO); (4) that Top of Iowa's actions constitute negligence, breach of fiduciary duty, and breach of contract; and (5) that Top of Iowa has engaged in fraud and misrepresentation." Top of Iowa Cooperative v. Schewe, 6 F. Supp. 2d 843, 847 (N.D. Iowa 1998). Top of Iowa filed its motion for partial summary judgment on March 12, 1998, requesting summary judgment on Schewe's first (1) and second (2) counts, and Schewe's affirmative defense of illegal contract. Id. Schewe filed a cross-motion for summary judgment for a declaration that the HTAs were illegal futures contracts and thus unenforceable. He also filed for dismissal of Top of Iowa's cause of action for failure to state a claim upon which relief can be granted because the terms of the HTAs barred recovery of the amounts paid in margin calls. Id. On May 25, 1998, the district court granted Top of Iowa's motion for

4

partial summary judgment, and dismissed Schewe's cross-motions, ruling that the HTAs were not illegal future contracts, but rather were valid "cash forward" contracts.

The jury trial began on April 2, 2001, on Schewe's breach of contract claim, and Top of Iowa's breach of contract and breach of fiduciary duty claims. On April 5, 2001, the jury returned a verdict in favor of Top of Iowa for $60,900 on the breach of contract claim; against Schewe on his breach of contract claim, and in favor of Schewe on his counterclaim of breach of fiduciary duty, with an award of $3,400 in damages. On April 9, 2001, the district entered judgment against Schewe for $60,900 and against Top of Iowa for $3,400.

Schewe filed a motion for post-trial relief on April 18, 2001, seeking an order to set aside Top of Iowa's breach of contract judgment, an order to amend the judgment to eliminate Top of Iowa's judgment; an order granting Schewe's renewed motion for judgment as a matter of law; or an order for a new trial due to an inconsistent and contradictory jury verdict. Top of Iowa filed its post-trial renewed motion for judgment as a matter of law on Schewe's breach of fiduciary duty counterclaim. All post-trial motions were denied by the district court on June 19, 2001.

Schewe appeals to this Court the district court's denial of his motion for judgment as a matter of law on the CEA claims. Schewe also appeals the district court's denial of his post-trial motions to alter or amend the judgment, his renewed motion for judgment as a matter of law, and his motion for a new trial. Top of Iowa cross-appeals its renewed motion for judgment as a matter of law on Schewe's breach of fiduciary duty counterclaim.

5

## III.  **DISCUSSION**

### A.    **Schewe's Motion for Judgment as a Matter of Law on the CEA Claim**

Schewe first challenges the district court's order of May 25, 1998, denying Schewe's cross-motion that the HTAs were illegal futures contracts under the CEA.  The Court reviews the district court's denial of summary judgment to Schewe's CEA claim *de novo*.  Grain Land Coop v. Kar Kim Farms, 199 F.3d 983, 990 (8th Cir. 1999).

In Grain Land this Court established the test for determining whether the contracts at issue are unregulated cash-forward contracts or futures contracts regulated by the CEA: "In order to determine whether a transaction is an unregulated cash-forward contract, we must decide 'whether there is a legitimate expectation that physical delivery of the actual commodity by the seller to the original contracting buyer will occur in the future.'" 199 F.3d at 991 (quoting Andersons, Inc. v. Horton Farms, Inc., 166 F.3d 308, 318 (6th Cir. 1998)); see also Haren v. Conrad Cooperative, 198 F.3d 683 (8th Cir. 1998) ("As we observed in Grain Land, while an obligation to deliver is not necessary to place a contract within the cash-forward exception, it is sufficient.").  The Court in Grain Land looked to the parties' intentions, contract terms, course of dealing, "and any other relevant factors to determine whether the parties contemplated physical delivery." 166 F.3d at 991.

Schewe argues that the test set forth in Grain Land should be expanded to include consideration of the underlying purpose of the HTAs to determine whether they are regulated by the CEA.  He alleges this will avoid the pitfall under the Grain Land test that any agreement between a farmer and a cooperative would fall

6

outside the scope of the CEA, regardless of the riskiness of the agreement. This is simply a misreading by Schewe of the decision in <u>Grain Land</u>. The test articulated in <u>Grain Land</u> does not hold that the businesses engaged in by the parties is dispositive of the issue; rather, it looks to whether the parties expected delivery of the grain. Because the <u>Grain Land</u> decision sets forth the legal principles for this case, this Court looks to whether Schewe can generate a material issue of fact that there was no intention to deliver the corn. This question is assessed taking the evidence in the light most favorable to Schewe. <u>See</u> <u>Grain Land</u> at 990.

As the district court found, it is clear in this case that both Schewe and Top of Iowa expected physical delivery of the corn would occur in the future. <u>See</u> <u>Top of Iowa Cooperative v. Schewe</u>, 6 F. Supp. 2d 843, 8355-56 (N.D. Iowa 1998). Schewe testified that he intended to deliver the corn. The terms of the contract contemplate delivery, and previous dealing between Schewe and Top of Iowa consisted of cash market sales of corn by Schewe to Top of Iowa. Schewe is engaged in the business of producing corn, and Top of Iowa purchases corn as part of its business. Schewe cannot generate a material issue of fact that he did not intend to deliver as defined by the test in <u>Grain Land</u>. Therefore, the Court affirms the district court's grant of summary judgment to Top of Iowa in determining that the HTAs are outside the scope of CEA regulations.

**B.     Schewe's Rule 59(e) Motion to Amend or Alter a Judgment**

Schewe claims that the district court erred in denying his Rule 59(e) Motion based on the jury's allegedly inconsistent verdicts that Top of Iowa breached its fiduciary duty, and that Top of Iowa did not breach the contracts. We review the district court's denial of the Rule 59(e) Motion for abuse of discretion. <u>Belk v. City of Eldon</u>, 228 F.3d 872, 877 (8th Cir. 2000).

7

Essentially, Schewe's claim is that the jury could not have found both that Top of Iowa breached its fiduciary duty and that Top of Iowa did not breach the contracts. According to Schewe, if Top of Iowa breached its fiduciary duty to him by not disclosing the risks of the HTAs, then Top of Iowa necessarily breached the contracts. However, the jury instructions for Top of Iowa's breach of contract claim did not require the jury to find that Top of Iowa had not breached its fiduciary duty to Schewe. As the district court concluded, "Schewe is attempting to turn his breach-of-fiduciary-duty counterclaim into a claim of breach of contract, on which he did not prevail, and/or a claim of fraudulent misrepresentation, which he did not submit to the jury. . . ." Top of Iowa Cooperative v. Schewe, 149 F. Supp. 2d 709, 723 (N.D. Iowa 2001). Therefore, we affirm the district court's denial of Schewe's Rule 59(e) motion.

### C.    Schewe's Rule 50 Motion for Judgment as a Matter of Law

Schewe claims the district court erred in denying his motion for judgment as a matter of law on Top of Iowa's breach of contract claim. Schewe alleges that the jury's finding of breach of fiduciary duty by Top of Iowa means that there was no legally sufficient evidentiary basis for two of the five elements of Top of Iowa's breach of contract claim. The Court reviews the denial of Schewe's motion for judgment as a matter of law *de novo*, applying the same standard as the district court. Belk 228 F.3d at 877. "Post-verdict judgment as a matter of law is appropriate only where the evidence is entirely insufficient to support the verdict." Id. at 878 (citing Greaser v. State Dep't of Corrections, 145 F.3d 979, 984 (8th Cir. 1998)).

The first element of Top of Iowa's breach of contract claim that Schewe challenges is the "meeting of the minds on all material terms" element. Schewe's argument is that because the jury found that Top of Iowa breached its fiduciary duty to Schewe to disclose the riskiness of the HTAs, there could not have been a

8

meeting of the minds. Schewe's argument fails for two reasons. First, jury instruction number four expressly required the jury to find there was a meeting of the minds. Both the evidence that Schewe attended Top of Iowa meetings wherein the riskiness of HTAs was disclosed, and the testimony that Paul Nessler of Top of Iowa disclosed the risk of rolling to Schewe support the jury's finding that there was a meeting of the minds. Second, the breach of fiduciary duty was a breach of the relationship between Schewe and Top of Iowa, not a breach of the contract. Top of Iowa had no contractual obligation to disclose the HTAs riskiness. The jury reasonably could have found that, while Top of Iowa breached its fiduciary duty in its relationship with Schewe, Top of Iowa disclosed all that was required in order for there to be a meeting of the minds on the HTAs.

The second element of Top of Iowa's breach of contract claim that Schewe challenges is whether "Top of Iowa has done what the contract requires or has been excused from doing what the contract requires." Schewe's claim is that the jury could not have found that Top of Iowa had done what the contract required because the jury found that Top of Iowa did not disclose the riskiness of the HTAs to Schewe. This argument is unpersuasive because the breach of contract claim is not legally identical to the breach of fiduciary duty claim, and the jury reasonably concluded, based on the evidence before it, that Top of Iowa disclosed all that the contract required. Therefore, the district court did not err in denying Schewe's request for a directed verdict on his renewed motion for judgment as a matter of law.

### D. Schewe's Rule 59(a) Motion for a New Trial

Schewe's final motion before the district court was for a new trial under Rule 59 of the Federal Rules of Civil Procedure because the jury's verdict was inconsistent. The district court denied that motion, and this Court reviews that denial under an abuse of discretion standard. Leichihman v. Pickwick Int'l, 814

9

F.2d 1263, 1266-67 (8th Cir. 1987). The district court should have granted the motion only if there was "no principled basis upon which to reconcile the jury's inconsistent findings." Bird v. John Chezik Homerun, Inc., 152 F.3d 1014, 1017 (8th Cir. 1998).

The district court did not abuse its discretion in attempting to reconcile the verdict in a reasonable manner. See Anheuser-Busch, Inc. v. John Labatt, Ltd., 89 F.3d 1339, 1347 (8th Cir. 1996). As previously discussed, supra at III(B)and (C), the jury could have reasonably found that Top of Iowa had breached its fiduciary duty and that Top of Iowa had not breached the terms of the contract. Therefore, the jury's verdicts were not inconsistent, and the denial by the district court of Schewe's motion for a new trial is affirmed.

### E.     Top of Iowa's Rule 50 Motion for Judgment as a Matter of Law

Finally, Top of Iowa challenges the district court's denial of its post-trial motion for judgment as a matter of law on Schewe's breach of fiduciary duty counterclaim. The Court reviews the denial of Top of Iowa's renewed motion for judgment as a matter of law *de novo*, applying the same standard as the district court. Belk 228 F.3d at 877. "A jury verdict must be affirmed unless, viewing the evidence in the light most favorable to the prevailing party, we conclude that a reasonable jury could not have found for that party." Stockmen's Livestock Mkt., Inc. v. Norwest Bank of Sioux City, 135 F.3d 1236, 1240-41 (8th Cir. 1998) (internal quotes omitted).

Top of Iowa argues that Schewe failed to produce any evidence supporting elements one or two of his breach of fiduciary duty counterclaim: element (1), a fiduciary relationship existed between Top of Iowa and Schewe, or element (2), that Top of Iowa breached that fiduciary relationship. For the same reasons given by the district court in its June 19, 2001, opinion, the Court affirms the district

10

court's denial of Top of Iowa's post-trial motion for judgment as a matter of law. See Top of Iowa, 149 F. Supp. 2d at 713-19.

Top of Iowa first challenges the jury's finding that a fiduciary relationship existed between Top of Iowa and Schewe. While the district court admits it would have reached a different verdict on this issue, the district court did find a sufficient evidentiary basis for the jury's verdict. Id. at 717. Under the legal standard for a finding of fiduciary duty outlined in jury instruction number six[6] the jury heard evidence that Top of Iowa's grain merchandiser, Paul Nessler, and general manager, Larry Peterson, were experienced with hedging on the CBOT. The jury heard no evidence that Schewe matched their sophistication with respect to such complex transactions. In addition, evidence was presented that Top of Iowa was privy to more information than was Schewe about the volatility of the corn market and the risks of rolling the HTAs. Schewe also testified that he was encouraged to enter the HTAs based on the advice of Top of Iowa representatives. The jury could have found that Top of Iowa possessed superior knowledge to Schewe, that Schewe would have relied on the advice of Top of Iowa's representatives. Therefore, the jury could have reasonably concluded that a fiduciary duty existed between Top of Iowa and Schewe.

Top of Iowa next challenges the jury's finding that Top of Iowa breached its fiduciary duty to Schewe. Jury instruction number six advised the jury that "[i]t is a breach of a fiduciary duty for a fiduciary to fail to perform the duty to disclose all material facts in dealing with the other party to permit the other party to make an intelligent, knowing decision in such dealings." Top of Iowa, 149 F. Supp. 2d at 719. Schewe testified that he was not told of the risk of rolling the HTAs, or

---

[6] Jury instruction number six stated, in part, that "[a] fiduciary relationship can therefore exist when the evidence indicates that . . . there was a disparity of business experience and an invitation to the party with lesser experience to place confidence in the advice of the other party." Top of Iowa, 149 F. Supp. 2d at 718.

11

that he was even notified of the rolling of his HTAs. It appeared that the jury believed this testimony over the "vigorous" and "effective" impeachment of Schewe, and the district court was reluctant, as are we, to "invade the jury's rightful province." Id. at 719 (internal quotes omitted). Therefore, the Court affirms the district court's denial of Top of Iowa's motion for judgment as a matter of law on Schewe's breach of fiduciary duty counterclaim.

Therefore, the denial of Top of Iowa's renewed motion for judgment as a matter of law on Schewe's breach of fiduciary duty counterclaim is affirmed.

## IV. <u>Conclusion</u>

For the foregoing reasons, the June 19, 2001, order of the district court denying all post-trial motions is AFFIRMED. The May 25, 1998, order of the district court granting partial summary judgment to Top of Iowa on Schewe's CEA claim is AFFIRMED.

A true copy.


Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

12