# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 05-3458

_____

Melford Olsen Honey, Inc,                    *
                                             *
            Plaintiff - Appellee,            *
                                             *
      v.                                     *
                                             *
Richard Adee, doing business as Adee         *
Honey Farms,                                 *
                                             *
            Defendant - Appellant.           *


_____

No. 05-3459

_____

                                               Appeal from the
                                               United States District Court
                                               for the District of Minnesota.

Melford Olsen Honey, Inc,                    *
                                             *
            Plaintiff - Appellant,           *
                                             *
      v.                                     *
                                             *
Richard Adee, doing business as Adee         *
Honey Farms,                                 *
                                             *
            Defendant - Appellant.           *

_____

Submitted: April 17, 2006
Filed: July 5, 2006

_____

Before LOKEN, Chief Judge, LAY, and BYE, Circuit Judges.
_____

BYE, Circuit Judge.

Melford Olson Honey, Inc. (Mel-O), a Minnesota honey wholesaler, sued Richard Adee (Richard) doing business as Adee Honey Farms (Adee Honey), a South Dakota honey farmer, in Minnesota state court for breach of contract and specific performance, alleging Adee Honey failed to provide the requisite quantity of honey set forth in a June 2002 contract. Adee Honey removed the case to federal court on diversity jurisdiction and counterclaimed for money owed under the same contract. The district court[1] denied both parties' motions for partial summary judgment, and the case proceeded to a jury trial. The jury returned a verdict in favor of Mel-O in the amount of $460,950 on the initial claim and a verdict in favor of Adee Honey in the amount of $695,206 on the counterclaim. The district court denied the parties' post-trial motions, and both parties timely appealed. We affirm.

## I

Adee Honey, formed by Richard in 1957, operates honey farms in California, Nebraska, Mississippi, and South Dakota. Adee Honey's principal place of business is in South Dakota. Mel-O is owned by William Sill, and Curt and Darcy Riess. They bought the company in 1997 and were referred to Richard by Mel-O's prior owners.

In March 2002, Adee Honey and Mel-O entered into an oral agreement for the sale of honey. At the time, Adee Honey possessed a sufficient inventory of honey and

_____

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

agreed to sell approximately thirty loads, or 1.5 million pounds,[2] to Mel-O for 82¢ per pound. Shortly thereafter, Mel-O sent a purchase order to Adee Honey memorializing the sale of 1.5 million pounds of honey for 82¢ per pound. The purchase order noted it was a contract with a "Good Thru" date of April 11, 2002. It was sent to Adee Honey's South Dakota office although Mel-O allegedly knew Richard was working at the Mississippi facility until mid-June.

At approximately the same time, Adee Honey called Mel-O to discuss the possibility of selling up to twelve loads of its inventoried honey to a competitor. According to Adee Honey, Mel-O agreed, thereby altering the quantity term of the March 2002 contract. According to Mel-O, it permitted Adee Honey to sell twelve loads of inventoried honey to another distributor, provided the terms of the March 2002 contract were fulfilled with other honey. Between the months of May and September 2002, Adee Honey sent Mel-O eighteen loads of honey at 82¢ per pound.

In May 2002, honey prices began to rise due to a contamination in major Chinese honey supplies. In June 2002, Mel-O contacted Adee Honey about purchasing an additional 3.2 million pounds, and the parties agreed on a $1.00 per pound purchase price for the additional quantity. Mel-O sent a contract to Adee Honey detailing the new arrangement, and Richard added a handwritten *force majeure* clause, specifically excusing performance in the event of "an act of God such as a drought or flood."

Later in the summer of 2002, South Dakota was experiencing drought-like conditions, and Adee Honey unilaterally stopped performing its obligations under the June contract. According to Mel-O, Richard contacted it to discuss the possibility of

---

[2]One load, or truckload, contains approximately 43,000 pounds. Although thirty loads would equal closer to 1.29 million pounds of honey, the parties disputed whether the March 2002 contract was for thirty loads, 1.5 million pounds, or a different quantity.

increasing the price of honey by 10¢ per pound to cover losses Adee Honey would suffer due to the production shortage. By the time Mel-O grudgingly decided to accept the terms, Adee Honey instead stated the new price would be $1.55 per pound instead of $1.00 to $1.10 per pound.

In the early fall of 2002, Adee Honey began delivering honey to Mel-O at an invoice price of $1.55 per pound. Mel-O, however, refused to pay for this honey. By November 2002, its account was roughly $1.7 million in arrears. In November and December, Mel-O paid Adee Honey 82¢ per pound for approximately 575,000 pounds received,[3] claiming this honey fulfilled the terms of the March 2002 contract.[4] Mel-O did not pay anything for an additional 602,206 pounds received. Mel-O admits owing $1.00 per pound on this quantity, subject to some adjustments.[5]

## II

Mel-O initiated this lawsuit claiming a breach of the June 2002 agreement,[6] requesting specific performance and damages. Adee Honey counterclaimed for the

---

[3]The Special Verdict form, however, asked the jury if Mel-O breached the "June 2002 contract by paying Adee Honey $.82 per pound for *551,374* pounds that were invoiced at $1.55 per pound." (emphasis added).

[4]According to Mel-O, it paid the invoiced amount for honey received prior to November 2002. Only after Adee Honey began invoicing the honey at $1.55 per pound did Mel-O determine the March 2002 contract had not been fulfilled, so it paid Adee Honey 82¢ per pound for approximately 575,000 pounds to satisfy the first contract.

[5]Mel-O contends it made an overpayment to Adee Honey on some honey received and, therefore, does not owe the entire $602,206.

[6]Mel-O did not seek enforcement of the March 2002 agreement because it paid 82¢ per pound for roughly 1.5 million pounds of honey delivered. Instead, it sued Adee Honey alleging non-performance of the June 2002 contract.

balance due on Mel-O's account. Both parties unsuccessfully moved for summary judgment, and the case proceeded to a jury trial. At trial, Mel-O submitted the following evidence of damages owed: 1) its owner Curt Reiss stated it would cost an average of $1.34 per pound to replace the honey; 2) a former Mel-O employee, James Jackson, computed diminished profits based on a comparison of yearly sales figures and the increased price of honey; and 3) Jackson testified as to potential accounts lost by Mel-O due to the $1.55-per-pound price insisted upon by Adee Honey.

The district court instructed the jury on the statute of frauds. The instruction stated oral contracts for the sale of goods over $500.00 are generally unenforceable. However, if the parties agree the contract exists, "Minnesota law provides that the March 2002 oral contract is enforceable, but not beyond the quantity of goods admitted by the party against whom enforcement is sought which, in this case, is Adee Honey." Mel-O did not object to this instruction or request any other instructions on the statute of frauds. On the Special Verdict, the jury determined Adee Honey breached the June 2002 agreement and the breach was not excused by *force majeure* or commercial impracticability. Because of this breach, the jury determined Mel-O was entitled to $235,950 for expenses and $225,000 for lost profits. With respect to Adee Honey's counterclaim, the jury determined Mel-O breached the June contract by paying only 82¢ per pound for honey invoiced at $1.55 per pound. For this breach, the jury awarded Adee Honey $75,000.[7] Additionally, the jury determined Mel-O owed $620,206 for the 620,206 pounds of honey for which it had never paid.

Both parties unsuccessfully moved for judgment as a matter of law and new trial. In ruling on the post-trial motions, the district court found Mel-O had waived

---

[7]How the jury arrived at this damages calculation is unclear. If the jury believed this honey should have been invoiced at $1.00 per pound, the resulting damages would have been $99,247.32, or an additional 18¢ per pound for 551,374 pounds. Instead, the damages awarded represent an underpayment of 13¢ per pound.

any argument concerning the merchant's exception to the statute of frauds by failing to request a jury instruction on it. Additionally, the court determined Mel-O could not satisfy the statutory standard. With respect to damages, the court upheld the jury's determinations as reasonable, despite being imprecise. The court rejected Adee Honey's arguments with respect to anticipatory repudiation, *force majeure*, and commercial impracticability, determining the jury's determinations were supported by the evidence submitted at trial. Both parties timely appealed.

## III

### A. The Statute of Frauds

The district court refused to grant either party's motion for summary judgment, a directed verdict, or other post-judgment relief on the basis of the statute of frauds. We review the district court's determination as to the applicability of the statute of frauds de novo. Simmons Foods, Inc. v. Hill's Pet Nutrition, Inc., 270 F.3d 723, 726 (8th Cir. 2001). Additionally, we review de novo the district court's denial of the motions for summary judgment, directed verdict, and for judgment as a matter of law. Top of Iowa Co-op v. Schewe, 324 F.3d 627, 631, 633 (8th Cir. 2003).

Generally, the Minnesota statute of frauds provides oral contracts for the sale of goods for $500.00 or more are unenforceable "unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought." Minn. Stat. § 336.2-201(1). The statute is applicable because the March 2002 contract for the sale of honey, goods priced over $500.00, was not reduced to writing and signed by Adee Honey, the party against whom enforcement was sought.

Adee Honey, however, admitted it contracted with Mel-O for eighteen loads of honey, and this admission constitutes an exception to the statute. Minn. Stat. § 336.2-

-6-

201(3)(b) (noting a contract otherwise within the statute may be enforced against a person who "admits in pleading, testimony or otherwise in court that a contract for sale was made," but not "beyond the quantity of goods admitted"). The jury thus was entitled to determine the March 2002 contract was enforceable for up to eighteen loads of honey.

Mel-O claims the entire quantity of 1.5 million pounds noted in its purchase order should be outside of the statute of frauds pursuant to the merchant's exception. Because Mel-O did not object to the jury instructions regarding the statute of frauds, it has not preserved this issue for appeal. Daggitt v. United Food & Com. Workers Int'l Union, Local 304A, 245 F.3d 981, 985 (8th Cir. 2001). We therefore limit our review of this issue to determine if the district court plainly erred. Id. (noting reversal is only warranted in "the exceptional case" in which the error "seriously affected the fairness, integrity, or public reputation of judicial proceedings") (quoting Figge Auto Co. v. Taylor, 325 F.2d 899, 907 (8th Cir. 1964)).

Under the merchant exception, Minnesota law provides:

(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) [regarding the general applicability of the statute of frauds] against such party unless written notice of objection to its contents is given within ten days after it is received.

Minn. Stat. § 336.2-201(2). Whether the parties have satisfied the statute of frauds is a question of law. Upsher-Smith Labs., Inc. v. Mylan Labs., Inc., 944 F. Supp. 1411, 1425 (D. Minn. 1996).[8] To submit the claim to a jury, the district court must

---

[8]In its order denying post-trial relief, the district court erred in determining the purchase order was actually an offer, rather than a confirmation. Although some documents can be viewed as offers, see W.H. Barber Co. v. McNamara-Vivant

determine if a "writing indicates an actual transaction."  UFE, Inc. v. Methode Elec., Inc., 808 F. Supp. 1407, 1412 (D. Minn. 1992) (citing Bazak Int'l Corp. v. Mast Indus., Inc., 535 N.E.2d 633, 637-38 (N.Y. 1989)); see also Upsher-Smith Labs., 944 F. Supp. at 1425 (noting all "that is required is that the writing afford a basis for believing that the offered oral evidence rests on a real transaction").  Once the court has made this preliminary determination, a jury determines whether the parties "actually entered" into the contract.  UFE, Inc., 808 F. Supp. at 1412.

No specific form is required to meet the merchant's exception.  A writing referring to a phone call between the parties and evidencing the type of products involved and their quantity will satisfy the statute.  See id.; Upsher-Smith Labs, 944 F. Supp. at 1425-26.  However, the writing must be "sufficient to indicate a contract." W.H. Barber Co., 293 N.W.2d at 356 (noting a bare list of projects was insufficient to establish a term indicating the parties agreed a "price protection" clause).

We hold the purchase order sent by Mel-O to Adee satisfies the requirements of the merchant's exception to statute of frauds.  The purchase order was sent to Adee's principal place of business in a timely manner, Adee had reason to know why it was sent, and Adee did not object to the terms set forth in the document.  See Bazak Intern. Corp., 535 N.E.2d at 633-34 ("We conclude the annotated purchase order forms signed by the buyer, sent to the seller and retained without objection, fall within the merchant's exception, satisfying the statutory requirement of a writing even without the buyer's signature."); see also Thomas Printing Mach. Co. v. B.F. Goodrich Co., 714 F.2d 744, 748 (7th Cir. 1983) (determining a party's principal place of

_____

Contracting Co., Inc., 293 N.W.2d 351, 355 (Minn. 1979) (finding price quotation letters insufficient to satisfy the statute of frauds generally and constituted "invitations to enter into a bargain"), the parties do not deny having an oral contract, at least to a certain quantity.  Because an oral contract exists, we must determine whether the writing sent by Mel-O to Adee Honey constituted a confirmation under the merchant's exception.

business is an adequate place to send a confirmation under the Uniform Commercial Code). Under the exception, Adee was not required to sign the document, and the presence of an ambiguous "Good Thru" date does not alter the analysis.

Once the merchant's exception has been satisfied, the district court may submit the evidence of the contract to the jury so the jury can determine its existence and the terms. Upsher-Smith Labs., 944 F. Supp. at 1425 (stating the party who asserts the validity of the contract "maintains the burden of persuading the trier-of-fact a contract actually exists, as well as establishing the actual terms and conditions of that contract"). Despite Mel-O's contention otherwise, meeting the statute of frauds does not prove the terms of the contract; meeting the statute of frauds allows a jury to determine the issue. The court below allowed Mel-O to present the confirmation order associated with the March 2002 contract to the jury. Based on the jury's answers on the Special Verdict, the jury rejected Mel-O's claim the March contract involved more than eighteen loads of honey. Thus, the district court did not plainly err in allowing the jury to make these determinations, and we refuse to disturb the jury's quantity determinations on appeal.

**B.** *Force Majeure*

Adee Honey next argues the district court erred in not granting its motions for summary judgment, directed verdict, and judgment as a matter of law on its *force majeure* defense. We review de novo. Top of Iowa Co-Op, 324 F.3d at 631, 633. Factual disputes, however, are resolved in favor of the non-moving party, and we will affirm the denial of a motion for judgment as a matter of law if a "reasonable jury could differ as to the conclusions that could be drawn" from the evidence presented at trial. Manning v. Metro. Life Ins. Co., Inc., 127 F.3d 686, 689-90 (8th Cir. 1997).

The June 2002 contract contains a handwritten *force majeure* clause. Next to the 3.2 million-pound quantity, Richard added: "provided production of said pounds

is NOT impeded by an Act of God such as by drought or flood." Neither party disputes whether the clause is enforceable or whether drought conditions occurred in the summer of 2002, potentially triggering the clause. Instead, the parties dispute the legal effect of the clause and the parties' continuing obligations under the contract.

The effect of a *force majeure* clause is to excuse performance in the event an unforseen circumstance occurs. See Suburban Newspapers of Greater St. Louis, Inc. v. Kroger Co., 886 F.2d 1060, 1062 (8th Cir. 1989). The performance to be excused is determined by the language of the clause. See id. According to Adee Honey, as soon as the drought occurred, it had the right to cease performance under the existing contract and to enter into new agreements at higher prices. Mel-O argues the *force majeure* clause does not give Adee Honey the unilateral right to raise the price of honey from $1.00 per pound to $1.55 per pound because of the weather conditions.

The district court determined the contract language was ambiguous because questions existed as to the severity of the drought, Adee Honey's ability to meet its contractual obligations, and Adee Honey's right to request additional money for honey under the June contract. Because the *force majeure* clause does not include language explicitly resolving any of these issues, the district court did not err in submitting these issues to the jury. The jury determined Adee Honey was not excused from performing the June 2002 contract, and we do not disturb these factual findings supported by the record.[9]

_____

[9]Adee Honey claims the district court and jury's interpretation of the *force majeure* clause rendered the clause meaningless. We disagree. The *force majeure* clause would allow Adee Honey to stop performance if the jury determined a drought occurred. It would not, however, give Adee Honey the unilateral right to raise the price of honey under the contract simply because the production of honey was less than expected.

Additionally, we reject Adee Honey's claim that the district court's interpretation of the *force majeure* clause transformed the June 2002 contract into an

-10-

## C. Commercial Impracticability

Adee Honey alternatively argues the district court should have granted its summary judgment and post-verdict motions on the grounds of commercial impracticability.  We review de novo, Top of Iowa Co-op, 324 F.3d at 631, 633, resolving factual discrepancies in favor of the non-moving party and in support of the jury's verdict.  Manning, 127 F.3d at 689-90.

The Minnesota Supreme Court recognized the "Uniform Commercial Code provision governing excuse of performance has replaced the common-law requirement of impossibility of performance by a less stringent standard of commercial impracticability."  Barbarossa & Sons, Inc. v. Iten Chevrolet, Inc., 265 N.W.2d 655, 658 (Minn. 1978).  Minnesota law provides:

> Except so far as a seller may have assumed a greater obligation and subject to the preceding section on substituted performance:
>
> (a) Delay in delivery or nondelivery in whole or in part by a seller who complies with paragraphs (b) and (c) is not a breach of duty under a contract for sale if performance as agreed has been made impracticable by the occurrence of a contingency the nonoccurrence of which was a basic assumption on which the contract was made or by compliance in good faith with any applicable foreign or domestic governmental regulation or order whether or not it later proves to be invalid.
>
> (b) Where the causes mentioned in paragraph (a) affect only a part of the seller's capacity to perform, the seller must allocate production and deliveries among the seller's customers but may include regular customers not then under contract as well as the seller's own

---

output contract.  Although Adee Honey may not have produced enough honey in the summer of 2002 to satisfy all of its contractual requirements, such circumstances did not transform any of its obligations into output contracts.

requirements for further manufacture. The seller may so allocate in any manner which is fair and reasonable.

(c) The seller must notify the buyer seasonably that there will be delay or nondelivery and, when allocation is required under paragraph (b), of the estimated quota thus made available for the buyer.

Minn. Stat. § 336.2-615. Under this doctrine, commercial impracticability excuses performance of both parties to the contract. Barbarossa & Sons, 265 N.W.2d at 658. This defense is available if Adee Honey can show the following four factors: "(1) a contingency has occurred which has made performance impracticable; (2) the nonoccurrence of that contingency was a basic assumption . . . ; (3) the seller has not assumed a greater obligation; and (4) the seller has seasonably notified the buyer that there will be a delay or nondelivery." Id. Additionally, Adee Honey must also show it made a "fair and reasonable" allocation of its inventory once the unforseen event occurred. Upsher-Smith Labs., 944 F. Supp. at 1429.

Although the availability of the commercial impracticability defense is a legal issue, a jury must determine whether the facts involved in the case sufficiently support such a defense. See Selland Pontiac–GMC, Inc. v. King, 384 N.W.2d 490, 493 (Minn. Ct. App. 1986) (noting the Minnesota commercial impracticability statute involves issues of fact); see also Barbarossa & Sons, 265 N.W.2d at 658-60 (treating the four-factor test as four factual questions). After considering evidence of the drought, Adee Honey's contractual obligations, and its ability to perform, the jury determined it was not excused from delivering all the honey due under the June 2002 contract. As with the *force majeure* defense, the jury rejected the claim it had the right to cancel the existing contract and replace it with another contract at a higher price. We find the jury's factual findings to be supported by the record below.

## D. Anticipatory Repudiation

Adee Honey next argues its performance was excused as a matter of law because Mel-O committed either an anticipatory repudiation of the contract or breached the contract without cure. These issues, raised in its motions for summary judgment and post-trial relief are reviewed de novo, Top of Iowa Co-op, 324 F.3d at 631, 633, and the factual determinations are interpreted in the light most favorable to the jury verdict. Manning, 127 F.3d at 689-90.

Adee Honey claims Mel-O breached, anticipatorily or otherwise, by not paying money owed on its accounts, and this breach was established when Mel-O stipulated it should have paid $1.00 per pound for 602,206 pounds of honey. An anticipatory breach is one in which "one party unequivocally informs the other that it no longer intends to honor their contract." Ricketts v. Adamson, 483 U.S. 1, 17 (1987) (Brennan, J. dissenting) (stating additionally the breach must be accompanied by an "absolute and unequivocal" renunciation of all duties under the contract); see also In re Haugen, 278 N.W.2d 75, 79 n.6 (Minn. 1979) (defining an anticipatory repudiation as "an unconditional repudiation of a contract, either by words or acts, which is communicated to the other party prior to the time fixed by the contract for his performance"). This case, however, involves no such "absolute and unequivocal" intent to breach the contract. Although Mel-O's account was in arrears, the evidence shows it remitted at least some payment in November 2002 and was still within the forty-five day payment window on its additional accounts. Thus, the district court did not err in denying Adee Honey's motion on this point.

Further, it is claimed Mel-O breached the June 2002 contract by not paying for the honey, and this breach constituted an uncured, material breach excusing Adee Honey's remaining performance under the contract. See Home Ins. Co. v. Nat'l Union Fire Ins. of Pittsburgh, 658 N.W.2d 522, 534 (Minn. 2003) (noting remedy for breach is to afford the non-breaching party the benefit of the bargain); see also Restatement

(Second) of Contracts § 237 (stating an uncured breach excuses the non-breaching party's performance under the contract). In this case, however, factual questions existed as to whether both parties breached and when those breaches occurred. Therefore, these issues were properly submitted to the jury. See E.L.E.S.C.O. v. N. States Power Co., 370 N.W.2d 700, 703 (Minn. Ct. App. 1985) (affirming the district court's grant of a judgment as a matter of law because of the seller's uncured breach and lack of evidence regarding a possible breach by the buyer). After hearing evidence on the March 2002 contract, the June 2002 contract, and the weather conditions in the summer of 2002, the jury determined both parties breached the June 2002 contract. Despite Adee Honey's contention otherwise, the jury did not find it was an innocent seller wronged by Mel-O's failure to pay its accounts. Instead, the jury determined Adee Honey, too, breached in refusing to supply honey to Mel-O after it had not agreed to pay an additional 55¢ per pound for honey. The district court did not err in submitting these questions to the jury or in denying Adee Honey's post-trial motions.

## E. Jury Instructions

Adee Honey also challenges the jury instructions given and the wording of the Special Verdict. District courts have great discretion in fashioning jury instructions, and we will not reverse a jury determination if the instructions "viewed on the whole, fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury." Smith v. Tenet Healthsystems, SL, Inc., 436 F.3d 879, 886 (8th Cir. 2006) (quoting Omega Healthcare Investors, Inc. v. Lantis Enters., Inc., 256 F.3d 774, 776 (8th Cir. 2001)). Given the court's great discretion in this area, we will not reverse unless the district court abused its discretion. Id.

Adee Honey claims the district court erred in the wording of Special Verdict question "2.": "Did the *force majeure* clause in the June 2002 contract, or commercial impracticability, excuse Adee Honey from delivering all of the honey specified in the

June 2002 contract, and at the price of $1.00 per pound?"  According to Adee Honey, this created a "nearly insurmountable" burden of proving the applicability of both defenses before the jury could respond "Yes."  This argument, however, is without merit because the instruction allows the jury to excuse Adee Honey's obligations under the contract if the jury found facts establishing either defense, though not necessarily both of them.  This instruction is proper, and we find the court did not abuse its discretion in wording the Special Verdict question in this matter.

Adee Honey also claims error in the court's decision to not include an instruction or Special Verdict entry regarding anticipatory repudiation.  This claim is waived because it failed to request a jury instruction on the issue as required by Federal Rule of Civil Procedure 51.  Daggitt, 245 F.3d at 985.  Because we determine the district court did not plainly err on this ground, we affirm the district court.

## F.  Damages

Finally, the parties both dispute the amount of damages awarded.  Because these issues were raised in the parties' post-trial motions, we review the district court's ruling de novo while resolving all factual questions in favor of the verdict reached.  To the extent this case involves the application of state law, we review those determinations de novo.  Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 718 (8th Cir. 2001).  We also review de novo whether a particular class of damages should have been submitted to the jury.  Dairy Farmers of Am., Inc. v. Travelers Ins. Co., 391 F.3d 936, 943 (8th Cir. 2004).  Adee Honey challenges the jury's award of damages for Mel-O's expenses incurred as a result of its breach and lost profits attributable to not receiving the contracted quantity.  Mel-O claims the jury erred in determining it owed anything to Adee Honey on honey paid for at 82¢ per pound but invoiced at $1.55 per pound, and it claims it is owed an adjustment on the jury's award to Adee Honey of $620,206 for 620,206 pounds of

honey because it had previously overpaid for honey when settling accounts not directly at issue in this case.

Under Minnesota law, incidental damages are recoverable and include expenses reasonably incurred "in connection with effecting cover and any other reasonable expense incident to the delay or other breach." Minn. Stat. § 336.2-715(1). A party's failure to cover can limit a prevailing party's ability to receive such damages, including lost profit damages. See Barry & Sewall Indus. Supply Co. v. Metal-Prep of Houston, Inc., 912 F.2d 252, 259 (8th Cir. 1990). Under Minnesota law, "[a]fter a breach . . . the buyer may 'cover' by making in good faith and without unreasonable delay any *reasonable purchase* of or contract to purchase goods in substitution of those due from the seller." Minn. Stat. § 336.2-712(1). If the purchaser covers, the buyer is entitled to receive the difference between the two prices, together with incidental and consequential damages. Minn. Stat. § 336.2-712(2). If the buyer does not cover, the party is limited to the damages of the difference between market price and the contract price, together with incidental and consequential damages.[10] Minn. Stat. § 336.2-713(1).

In this case, the jury awarded Mel-O $235,950 in damages resulting from Adee Honey's failure to provide sufficient honey under the June 2002 contract. It also awarded Mel-O $225,000 for lost profits. Because Mel-O did not cover, it is only entitled to damages under Minn. Stat. § 336.2-713(1). We have held, however, an injured party is not required "to take measures which are unreasonable or impractical or which require expenditures disproportionate to the loss sought to be avoided or which are beyond his financial means." Simeone v. First Bank Nat'l Assoc., 73 F.3d 184, 189 (8th Cir. 1996) (citation omitted). The jury heard evidence regarding available honey on the market, the ability to purchase honey on the market and still

[10]The definitions of incidental and consequential damages, Minn. Stat. § 336.2-715, however, require the buyer to make a reasonable attempt to cover to be eligible for these damages, even under the "market minus contract" damages formulation.

make a profit, the available cash on hand to purchase cover honey, and Mel-O's existing contractual obligations. The jury's award of incidental and consequential damages, then, must be based on its finding cover was not reasonable at the time. Further, the award of $235,950 is supported by evidence presented establishing a market price between $1.34 per pound and $1.70 per pound at the time Adee Honey breached. The jury determination supports Mel-O's theory Adee Honey owed Mel-O roughly 34¢ per pound on honey not delivered under the contract.

With respect to lost profits, Mel-O bears the burden of showing the profits were foreseeable at the time of contracting. Hydra-Mac, Inc. v. Onan Corp., 450 N.W.2d 913, 920 (Minn. 1990). "The focus is on what the seller had reason to know," Simeone, 73 F.3d at 188, and a damages calculation based purely on speculation is not recoverable at law. Lassen v. First Bank Eden Prarie, 514 N.W.2d 831, 839 (Minn. Ct. App. 1994). Significant evidence was presented at trial regarding lost profits, lost accounts, lost future accounts, and other types of damages. Although this evidence was not introduced through an expert witness, the witnesses who did testify were familiar with Mel-O and its accounts. Accordingly, the district court did not err in denying Adee Honey's post-trial motions.

Finally, we refuse to adjust downward the finding of the jury in which Mel-O should have paid $620,206.00 on the 620,206 pounds of honey for which it did not pay. It claims this figure should be reduced to $603,904.84 due to an earlier overpayment made to Adee Honey. The damages award rendered, however, need not match any certain projected number provided the award falls within the mathematical limitations set forth by the witnesses and the trial evidence as a whole. Children's Broad. Corp. v. Walt Disney Co., 357 F.3d 860, 865 (8th Cir. 2004). Mel-O could only have overpaid its accounts if the jury believed the March 2002 contract was for 1.5 million pounds of honey, a claim it apparently rejected. Because the jury's determination Mel-O owed $1.00 per pound for honey is within the mathematical

limits set forth by the evidence at trial, the district court did not err in denying its post-trial motions.

## IV

Accordingly, we affirm.

_____