# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 00-3670

_____

Omega Healthcare Investors, Inc.,     *

                                 *

           Plaintiff-Appellee,     *

                                 *    Appeal from the United States

    v.                             *    District Court for District of South

                                 *    Dakota.

Lantis Enterprises, Inc.; Willis Lantis,     *

Mary Ellen Lantis,                    *

                                 *

           Defendants-Appellants.     *

_____

Submitted: June 14, 2001

Filed: July 10, 2001

_____

Before MURPHY, HEANEY, and BEAM, Circuit Judges.

_____

MURPHY, Circuit Judge.

      Omega Healthcare Investors (Omega) filed a breach of contract claim against Lantis Enterprises, Inc. and Will and Mary Lantis (Lantis) to recover a loan commitment fee and other damages and expenses. The district court[1] denied Omega's motion for partial summary judgment, and the case proceeded to trial. The jury returned a verdict in favor of Omega, and Lantis appeals from the judgment, asserting

_____

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota.

errors in the jury instructions.  We affirm.

Omega, a corporation that finances healthcare real estate ventures, entered into discussions with Lantis, a developer and operator of healthcare facilities, to provide a loan for building assisted living facilities and nursing homes.  After extensive negotiations and many different draft loan documents, the parties entered into a loan commitment letter.  In this letter Omega committed to loan Lantis $27,096,000 for eight assisted living facilities and three nursing homes.  The letter also required Omega to advance $1,000,000 to Lantis before execution of the final loan documents.  Omega paid the advance and received a promissory note in return.  The loan commitment agreement required Lantis to pay Omega a "nonrefundable commitment fee" of $270,960, and Lantis paid Omega this amount.  The loans were personally guaranteed by Will and Mary Lantis.

Omega and Lantis were unable to agree on the terms of the loan after lengthy negotiations.  Omega agreed nevertheless to advance an additional $400,000 in order to allow Lantis to continue construction of an assisted living facility in Nebraska.  Lantis ultimately withdrew from the transaction with Omega and on that same day solicited an alternative source of financing.  Four months later Lantis transferred $1,132,662.33 to Omega.  Lantis intended this as repayment with interest of Omega's advanced funds, but it subtracted the amount of the "nonrefundable" commitment fee it had paid Omega.  Omega applied part of the transfer to interest, gave notice of default to Lantis, and accelerated the entire remaining amount due.

Omega brought this breach of contract action against Lantis to recover the commitment fee and other damages and expenses.  It moved for partial summary judgment on the basis that the promissory note had to be repaid regardless of who may have breached the loan commitment agreement.  The district court decided that  the "nonrefundable commitment fee" provision was ambiguous and denied Omega's motion.  The case proceeded to a jury trial where Lantis' theory was that the

commitment fee would only become nonrefundable at such time as the loan agreement would be signed.  Omega contended on the other hand that the fee was nonrefundable as soon as it advanced the  $1,000,000 to Lantis.  The court instructed the jury that

> [t]here has been considerable argument by both parties as to the meaning of the "nonrefundable commitment fee."  It is for you to determine the intention of the parties regarding the payment of this fee and you should consider all the documents and evidence surrounding this transaction in determining the intention of the parties.

The district court did not give two of the instructions proposed by Lantis which dealt with ambiguity.   The jury found that Lantis had breached the agreement and awarded Omega $312,300.56.

Judgment was entered against Lantis for the amount of the verdict, and Lantis on appeal seeks reversal and a new trial.  Lantis argues that the district court should have included the two jury instructions it proposed on ambiguity in the commitment letter and that it was prejudiced as a result.  Omega responds that the contract was not ambiguous and that the Lantis instructions were not legally correct in any event.

The trial court has "wide discretion" in drafting jury instructions.  See Gamma 10 Plastics v. American President Lines, Ltd., 105 F.3d 387, 389 (8th Cir. 1997) (citation omitted).  Our "review is limited to whether the instructions, viewed on the whole, fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case."[2]  Oriential Trading Co., Inc. v. Firetti 236 F.3d 938, 946-47 (8th Cir. 2001) (citation omitted).  "The court need not adopt the language offered by the parties but must give an 'instruction reflecting that party's theory of the case if the instruction is legally correct and there is evidence to support it.'"  Id. at 947 (citation omitted).

---

[2]The parties agree that Michigan substantive law applies to this dispute.

Lantis argues that the district court erred in not instructing the jury that the term "nonrefundable" in the commitment letter should be construed against Omega which drafted the letter.[3]  Even assuming that that provision in the commitment letter was ambiguous, the proposed instruction was not appropriate in this case.  The rule that an ambiguity should be construed against the drafter is normally not applied in situations where the agreement has been reached through extensive negotiations and the parties are sophisticated and represented by counsel.  See Regis Assocs. v. Rank Hotel (Mgmt.) Ltd., 894 F.2d 193, 195-96 (6th Cir. 1990); Homac Inc. v. DSA Fin. Corp., 661 F.Supp. 776, 788 (E.D. Mich. 1987); see also Terra Int'l, Inc. v. Mississippi Chemical Corp., 119 F.3d 688, 692-93 (8th Cir. 1997).  In this case all parties were experienced in real estate financing, and Lantis was represented by two attorneys who engaged in protracted negotiations on the terms of the commitment letter and loan agreement.  The district court did not err by refusing to give the proposed instruction to construe the term "nonrefundable" against Omega.

Lantis also contends that the district court erred by not instructing the jury that a particular construction it claims was given to the disputed term by Omega should be

---

[3]It requested the following instruction:

You are instructed that the term "nonrefundable" as used in the Commitment Letter executed by the parties is ambiguous.  By ambiguous is meant that it is susceptible to more than one meaning.  It is for you to determine the intention of the parties regarding the payment of the commitment fee and you should consider all of the documents and evidence surrounding this transaction in determining the intention of the parties.  In this regard, you are instructed that you should construe the phrase "nonrefundable" against the Plaintiff who drafted the agreement and caused the ambiguity to exist.

entitled to great weight.[4]  Lantis argues that one draft of a loan agreement that Omega prepared, after the loan commitment letter was signed, referred to the commitment fee as an "acceptance fee," refundable up until the time the loan agreement was executed. Although interpretations of contractual terms by the parties may be entitled to great weight, see Merdler v. Board of Educ. of the School Dist. of the City of Detroit, 259 N.W.2d 211, 213 (Mich. Ct. App. 1977), that is not true unless the extrinsic aid used for interpretation was a "circumstance[] surrounding the execution of the [commitment letter]" rather than a "subsequent event." William C. Roney & Co. v. Federal Ins. Co., 674 F.2d 587, 590 n.2 (6th Cir. 1982).  The loan agreement proposal that Lantis claims is entitled to great weight was drafted well after the commitment letter, and the proposed instruction did not fit the evidence.  Furthermore, the district court allowed that draft of the loan agreement to be entered into evidence and instructed the jury that it was to consider all evidence, including previous drafts, in determining the intent of the parties.  The district court did not err by not including this instruction proposed by Lantis.

The district court allowed both sides ample opportunity to present conflicting evidence of their protracted contractual negotiations, including who drafted provisions of letters and loan agreements and what was included in them.  The jury was properly instructed on the applicable law, and the court did not abuse its discretion by declining to give the two instructions Lantis requested.  The judgment of the district court is therefore affirmed.

---

[4]The proposed instruction stated in part that "[w]here the parties to a contract have given a practical construction by their conduct in carrying it into effect, as by acts in partial performance, such construction is entitled to great, if not controlling, weight in determining its proper interpretation."

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS,  EIGHTH CIRCUIT.