# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2238

_____

| | | |
|---|---|---|
| Linda Sosna, Individually, as | * | |
| Plaintiff Ad Litem and as Personal | * | |
| Representative of the Estate of | * | |
| Richard S. Sosna, | * | Appeal from the United States |
| | * | District Court for the |
| Appellant, | * | Eastern District of Missouri. |
| | * | |
| v. | * | |
| | * | |
| H. Bradley Binnington, M.D., | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: January 13, 2003

Filed: March 10, 2003

_____

Before BOWMAN, RICHARD S. ARNOLD, and BYE, Circuit Judges.

_____

BOWMAN, Circuit Judge.

In 1994, the husband of the appellant, Linda Sosna, died following surgery to relieve a small-bowel obstruction. Sosna subsequently brought this medical-malpractice action against the surgeon, Dr. H. Bradley Binnington, in federal court based on diversity jurisdiction. A jury returned a verdict in favor of Binnington, and Sosna filed this appeal urging that she be granted a new trial because the District

Court[1] committed several evidentiary errors related to the testimony of the defendant's experts and the defendant himself. We affirm.

I.

On December 5, 1994, Richard Sosna underwent surgery to relieve an obstruction in his small bowel. His operation, which included an incidental appendectomy, was apparently unremarkable, as was his recovery, until the day after surgery. On December 6, he developed a fever and was started on antibiotics to combat any wound infection. On December 7, his surgical incision was noted to be red, infected, and oozing. In response, Binnington reopened the wound, drained it, and started the patient on a new course of antibiotics. By late in the day on December 7, Richard Sosna's body was red and swollen from below his belly button to his thighs, including his genitals. On December 8, he was seen by an infectious disease consultant who made further changes in his course of antibiotic treatment. On December 9, an MRI was performed that indicated the presence of air (and, consequently, a serious, possibly systemic, infection) within the small bowel and liver. He collapsed late that morning and Binnington returned him to the operating room early that afternoon; however, Binnington could detect nothing that was surgically correctable. Richard Sosna died in the early morning hours of December 10.

The parties agree that Richard Sosna was killed by an infection but disagree as to the infection's etiology. Sosna presented a case based on two scenarios in which Binnington erred in his care of his patient. Sosna presented evidence that suggested that the cause of the wound infection and of the fatal sepsis (i.e., systemic, blood-born infection) was leakage of bacteria from the small bowel. This bacteria leaked either

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

-2-

because Binnington failed to relieve the obstruction during the first surgery—which caused the bowel to become distended, lose cohesion, and allow the bacteria to "transmigrate" or "translocate" into the abdomen—or because Binnington failed to discover that Richard Sosna's small bowel was already leaking bacteria during the first surgery. Thus, Sosna argued that Binnington either failed to relieve the small-bowel obstruction or failed to surgically resect (i.e., remove) the injured portion of bowel before December 9.

For his part, Binnington presented evidence that Richard Sosna's wound infection was responding well to treatment and was unrelated to, and distinct from, his fatal sepsis. Additionally, Binnington's evidence suggested that the physical evidence, particularly the autopsy report, was inconsistent with plaintiff's theory of the case. He also presented evidence that the precise cause of the fatal infection was unknown, that the fatal infection developed later than Sosna argued, and that the fatal infection likely spread from the small bowel to the liver (via the portal vein) and to the rest of the body via Sosna's blood. Based on the evidence, Binnington argued, his surgical care of Richard Sosna was not substandard. The jury found in favor of Binnington.

II.

Sosna urges that the District Court committed four evidentiary errors that prejudiced her case and entitle her to a new trial. Specifically, the appellant contends that the District Court erred: when it limited the cross-examination of defendant's expert, Dr. Jeffrey A. Drebin, regarding his personal surgical practices (which differed from Binnington's); when it allowed defendant's expert, Dr. John S. Daniels, to testify in areas beyond his expertise; when it allowed the defendant to testify that the plaintiff's translocation or transmigration theory was questionable and was "not held in high regard anymore by researchers in the field of surgical sepsis"; and when it allowed the whole of the pathologist's report into evidence. We disagree and hold

that, on the record before us, the District Court did not abuse its discretion when it made these evidentiary rulings.

The substantive law of Missouri governs this diversity case. See Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78 (1938). Under Missouri law, a plaintiff in a medical malpractice suit must prove that, by act or omission, the defendant failed to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of his profession and that this negligent act or omission in fact caused the plaintiff's injury. Washington by Washington v. Barnes Hosp., 897 S.W.2d 611, 615 (Mo. 1995). The Federal Rules of Evidence govern the admissibility of evidence. See Potts v. Benjamin, 882 F.3d 1320, 1324 (8th Cir. 1989). A district court has broad discretion when it rules on the admissibility of evidence and we will not disturb such rulings "'absent a clear and prejudicial abuse of that discretion.'" Hoselton v. Metz Baking Co., 48 F.3d 1056, 1060 (8th Cir. 1995) (quoting Laubach v. Otis Elevator Co., 37 F.3d 427, 428-29 (8th Cir. 1994)). We consider Sosna's alleged errors in turn.

A. Dr. Drebin's Testimony

Sosna first argues that the District Court erred when it limited the scope of her cross-examination of the defendant's expert, Dr. Drebin. The District Court granted Binnington's motion in limine and ruled that Drebin could not be questioned regarding his deposition testimony that he was critical of Binnington's actions because he personally would have administered antibiotics peri-operatively (i.e., during surgery), would have decompressed the bowel, and would not have performed an incidental appendectomy. We think the District Court properly concluded that these were Drebin's personal practices or opinions and therefore were not relevant to the standard of care and that, to the extent that they were relevant, they had a tendency to confuse the jury and to unfairly prejudice the defendant. See Fed. R. Evid. 403. Sosna's theory of liability did not involve any of the practices that Drebin

-4-

was critical of Binnington for performing (or for not performing). Had Sosna pursued a theory of liability premised on one of these actions, the associated evidence might have been admissible as relevant to the standard of care. However, because Sosna's case was premised on a different theory and chain of events (i.e., the failure to relieve the obstruction or remove the compromised section of the small bowel), we see no abuse of discretion in the District Court's ruling.

Even were we to find that the District Court erred when it limited the cross-examination, we would not reverse because Sosna was not prejudiced. In this case, the excluded evidence was not "of a critical nature"; hence, we have a "reasonable assurance that the jury would have reached the same conclusion had the evidence been admitted." Adams v. Fuqua Indus., Inc., 820 F.2d 271, 273 (8th Cir. 1987). Notwithstanding his criticisms of Binnington, the whole of Drebin's testimony in his deposition was that the defendant's deviations from Drebin's own surgical practices did not cause the fatal infection and were not a cause of Sosna's death. Thus, in his deposition, Drebin stated that the failure to administer antibiotics peri-operatively did not make a difference to Sosna's outcome. Drebin Dep. at 24. Further, with regard to Binnington's decision not to decompress the small bowel, Drebin stated that he was not critical of that action and that the only reason to decompress a small bowel was to facilitate closure of the wound. Id. at 40. Finally, although he was critical of Binnington's decision to perform an incidental appendectomy, Drebin stated that it was impossible to determine whether this contributed to Sosna's death and that, in any event, Binnington had not deviated from the standard of care in doing so because such procedures are "not uncommonly done." Id. at 72-73; Tr. Vol. VI at 32-33. Because Sosna was not prejudiced by the District Court's decision to limit the scope of the plaintiff's cross-examination of Dr. Drebin, any error was harmless. See Thorson v. Gemini, Inc., 205 F.3d 370, 383 (8th Cir.), cert. denied, 531 U.S. 871 (2000).

## B. Testimony of Dr. Daniels

Sosna also argues that the District Court erred when it allowed Binnington to present the testimony of Dr. Daniels, who is an internist and not a surgeon, regarding whether Binnington complied with the relevant standard of care. Rule 702 and the Supreme Court's jurisprudence make it clear that a district court must not only act as a gatekeeper when ruling on the admissibility of expert testimony, but must also "continue to perform its gatekeeping role by ensuring that the actual testimony does not exceed the scope of the expert's expertise." Wheeling Pitts. Steel v. Beelman River Terminals, 254 F.3d 706, 715 (8th Cir. 2001). In Wheeling, we held that the district court erred when it allowed a hydrologist, an admitted expert in hydrology and flood risk management, to testify regarding safe warehousing practices that he had neither studied nor gained practical experience about. See id. After reviewing the record in this case, we find no similar abuse of discretion. Dr. Daniels is an internist with expertise in endocrinology. At least some of his research focused on the small bowel, and he regularly treated patients whose small-bowel obstructions were relieved medically or through surgical intervention. Hence, Dr. Daniels was competent to testify about the proper pre- and post-surgical treatment of patients with small-bowel obstructions. Dr. Daniels did not offer testimony regarding the technical aspects of the surgical procedure, nor could he. We conclude the District Court did not abuse its discretion when it admitted the testimony of Dr. Daniels.

## C. Dr. Binnington's Testimony

Sosna next urges that the District Court improperly admitted hearsay testimony when it allowed Binnington to testify on re-direct that the plaintiff's transmigration or translocation "theory is not held in high regard anymore by researchers in the field of surgical sepsis." Tr. Vol. V at 177. We disagree.

First, even if it were the case that Binnington had testified on direct examination that the transmigration "theory is not held in high regard anymore by researchers in the field of surgical sepsis," Sosna would not be correct that inadmissible hearsay had been allowed into the record. Rule 703 permits an expert to "rely on otherwise inadmissible hearsay evidence in forming his opinion if the facts and data upon which he relies are of a type reasonably relied upon by experts in his field." Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc., 125 F.3d 1176, 1182 (8th Cir. 1997) (citing Fed. R. Evid. 703). Thus, when Binnington testified in his capacity as a surgeon, Rule 703 clearly permited him to rely on studies or other data produced by researchers in the field of surgical sepsis because this is the type of material "reasonably relied upon by experts in [this] field." This, however, is not what happened. Appellant's brief omits reference to the fact that the testimony in question was not elicited during Binnington's direct examination. Rather, pursuant to Rule 705, Sosna questioned Binnington three times during Binnington's cross-examination regarding his deposition testimony about the transmigration theory. In response to these questions, Binnington testified that, although in 1997 (the time of his deposition) he thought that transmigration was one theory for how bacteria might have escaped from Sosna's small bowel, the present state (in 2002) of medical research did not support that theory. Tr. Vol. V at 141-43, 155-57, 164-65. This is substantially the same testimony that the plaintiff subsequently objected to during the defense's re-direct. Plaintiff's having elicited this testimony pursuant to Rule 705, which permits inquiry into the underlying facts or data upon which an expert's opinion is based, the District Court did not abuse its discretion when it overruled plaintiff's objection to further inquiry into the subject on Binnington's re-direct.

## D. Autopsy Report

Finally, Sosna argues that the District Court admitted improper hearsay testimony when it allowed into evidence certain statements of the pathologist regarding Richard Sosna's cause of death that were contained in the autopsy report.

We disagree.  The District Court did not abuse its discretion when it admitted the entire autopsy report into evidence under Rule 803(6) as a business record.  It is of no avail for Sosna to argue that the statement that "[t]he ischemia of the segment of small bowel and acute tubular necrosis of the kidneys was most likely secondary to DIC and hypotension prior to death" was solely the opinion of the pathologist.  Autopsy Rep. at 4.  Rule 803(6) specifically speaks to, and makes admissible, records or reports

> of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation.

Fed. R. Evid. 803(6).  We conclude that the opinions of the pathologist contained in his autopsy report fit comfortably within Rule 803(6)'s confines.

### III.

For the reasons stated above, we affirm the judgment entered on the jury verdict in favor of Dr. Binnington.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.