# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 05-1173

_____

Dennis F. Smith; Marya Smith,     *
                                  *
        Appellants,               *
                                  *
    v.                            *     Appeal from the United States
                                  *     District Court, Eastern District of
Tenet Healthsystem SL, Inc.,      *     Missouri.
doing business as St. Louis       *
University Hospital; Tenet        *
Healthcare Corporation; St. Louis *
University; Robert E. Burdge,     *
M.D.,                             *
                                  *
        Appellees.                *


_____

Submitted: November 17, 2005
    Filed: February 3, 2006

_____

Before MURPHY, BOWMAN and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Dennis F. Smith ("Smith") brought this two-count medical malpractice action regarding the amputation of his right leg. The district court[1] granted partial summary

_____

[1]The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

judgment and partial judgment as a matter of law in favor of the defendants on count one. A jury returned a verdict in favor of the defendants on count two. The district court then denied Smith's motion for a new trial and taxed Smith for a portion of the defendants' costs. Smith raises eight issues on appeal. For the reasons discussed below, we affirm the judgments and verdict but remand for a reduction of costs taxed to Smith.

## I.    BACKGROUND

Smith, a 50-year-old former coal miner, has a 30-year history of medical problems with his right knee. He has undergone more than a dozen surgeries on that knee. In 1986, Dr. Robert Burdge replaced Smith's right knee joint with a prosthesis. Dr. Burdge warned Smith about the possibility of having his leg amputated if his knee got worse and expressed concern about the effect of Smith's heavy work as a coal miner. In 1995, Smith received a total knee replacement by another physician and began receiving Social Security disability benefits. When he received this prosthesis, physicians informed him of substantial bone loss in his knee, precluding any future knee replacements. In 2000, Dr. Burdge performed a bone graft procedure to stabilize the total-knee prosthesis.

On January 5, 2001, Dr. Burdge performed a second bone graft procedure at St. Louis University Hospital because Smith's tibial plateau had collapsed. A few days after the surgery, Smith began to develop severe, adverse symptoms around the surgical site. On January 18, 2001, he went to a scheduled follow-up visit with Dr. Burdge. Because of Smith's symptoms, Dr. Burdge admitted Smith to St. Louis University Hospital and prescribed an antibiotic treatment in case Smith had an infection. Smith's condition worsened and Dr. Burdge removed the bone grafts because he suspected that Smith was experiencing a bone graft rejection. The symptoms of infection are the same or similar to the symptoms of a bone graft

rejection. After numerous related hospital stays over the ensuing months and with all other options seeming futile, Smith consented to have his right leg amputated above the knee. That procedure was performed on September 20, 2001.

In 2002, Smith brought this two-count medical malpractice action based on diversity jurisdiction against Dr. Burdge, Tenet Healthsystem SL, Inc., doing business as St. Louis University Hospital ("Tenet"), and Dr. Burdge's employer, St. Louis University ("SLU") (collectively, "the defendants").[2] Smith alleged that the defendants' negligent treatment caused the amputation of his right leg. Count one alleged that Tenet and SLU placed Smith in an "unclean hospital room" following his January 5, 2001, procedure and failed to follow internal policies and federal regulations regarding infection control (the "infection-control policies"). Count two alleged that the defendants were liable for Dr. Burdge's negligent failure to properly diagnose, treat and monitor Smith's knee.[3] The defendants denied all liability, denied that Smith developed an infection in his right knee, and suggested that the cumulative trauma from Smith's history of knee problems was the sole cause of his amputation.

The district court granted summary judgment in favor of Tenet and SLU on the portion of count one concerning the allegation of an unclean hospital room and judgment as a matter of law in favor of Tenet and SLU on the remainder of count one.

---

[2]The district court granted summary judgment to a fourth defendant, Tenet Healthcare Corporation, after determining that it was not an alter ego of Tenet Healthsystem SL. Smith does not appeal this judgment.

[3]In addition to these two counts, Smith's wife, Marya Smith, brought two derivative claims for loss of consortium. Being derivative, Mrs. Smith's claims follow the fate of her husband's claims. Therefore, she cannot recover because we conclude that Dennis Smith has no valid claim for his personal injuries. *See Richardson v. State Highway & Transp. Comm'n*, 863 S.W.2d 876, 880 (Mo. banc 1993).

A jury returned a verdict in favor of the defendants on count two, and the district court denied Smith's motion for a new trial and taxed Smith for a portion of the defendants' costs. Smith raises eight issues on appeal and renews his request for a new trial.

## II.     DISCUSSION

### A.     Voir Dire

Smith argues that the district court abused its discretion in disallowing certain of his questions during voir dire because this limitation prevented an inquiry into potential juror biases regarding tort reform, medical malpractice and plaintiffs with preexisting medical conditions. Because Smith contemporaneously failed to object to the way in which voir dire was conducted and did not request permission to rephrase his questions, we review this issue for plain error to determine if the limitation was so prejudicial as to cause a miscarriage of justice. *Ratliff v. Schiber Truck Co., Inc.*, 150 F.3d 949, 956 (8th Cir. 1998).

Given the questions asked of the potential jurors by the district court and Smith's attorney, we find no error. District courts have broad discretion to determine the scope of voir dire. *Id.* at 956. Voir dire is proper provided that there is an adequate inquiry to determine any juror bias or prejudice. *See Nanninga v. Three Rivers Elec. Coop.*, 236 F.3d 902, 906-07 (8th Cir. 2000). In this case, the district court questioned the prospective jurors about experiences involving medical malpractice. The court also gave each party twenty minutes to supplement the court's examination. *See* Fed. R. Civ. P. 47(a) (explaining that when the court examines prospective jurors, "the court shall permit the parties or their attorneys to supplement the examination by such further inquiry *as it deems proper*") (emphasis added).

Prior to voir dire, the parties submitted proposed questions in writing. The district court disallowed certain of Smith's questions because they called for lengthy responses from individual jurors.[4] However, during Smith's supplementary examination, Smith's counsel was permitted to ask questions to individual potential jurors. The district court even allowed potential jurors to respond to two questions that Smith's counsel asked about tort reform and medical malpractice despite the district court's instruction before voir dire that Smith's counsel was not to ask those questions. Voir dire provided an adequate inquiry to determine any juror bias or prejudice.

## B.    Admission of Medical, Psychiatric and Social Security Records

The district court admitted into evidence some of Smith's medical, psychiatric and Social Security records over Smith's objections that these records were irrelevant and unduly prejudicial. Smith reiterates these arguments on appeal and argues that, despite a request from Smith, the district court failed to weigh the probative value of these records against their prejudicial effect. *See* Fed. R. Evid. 403. The Federal Rules of Evidence govern the admissibility of evidence in a medical malpractice action based upon diversity jurisdiction. *See Sosna v. Binnington*, 321 F.3d 742, 744-45 (8th Cir. 2003). We review a district court's rulings on the admissibility of evidence for a clear and prejudicial abuse of discretion. *Id.* at 745.

We cannot say that the district court abused its discretion in determining that these records were relevant. Evidence is relevant if it merely has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.

---

[4]For example, Smith submitted the question: "Some people think that lawsuits are frivolous–what are your thoughts?"

R. Evid. 401. "The trial judge has broad discretion in determining the relevance of a given item of evidence." *United States v. Wilson*, 787 F.2d 375, 389 (8th Cir. 1986). The defendants' theory of the case was that Smith's amputation was caused by the cumulative trauma of his decades of knee problems. These records substantiate Smith's history of knee problems. The non-medical portions of the records pertained to other issues at trial, such as the extent of Smith's damages.

We also cannot say that the district court abused its discretion in determining that any prejudicial effect of these records did not substantially outweigh their probative value. *See* Fed. R. Evid. 403; *United States v. Derring*, 592 F.2d 1003, 1007 (8th Cir. 1979) ("We do not reweigh the value of the material against its potential for harm to the defendant, but determine only whether the district judge abused his discretion in admitting it."). Generally, the balance of Rule 403 weighing should be struck in favor of admission. *Block v. R.H. Macy & Co., Inc.*, 712 F.2d 1241, 1244 (8th Cir. 1983). We find nothing in the record to indicate that the district court abused its discretion in following this general rule.

Smith argues that the district court abused its discretion because, despite Smith's motions and objections, the court did not actually weigh the evidence pursuant to Rule 403. We presume that the district court weighed this evidence pursuant to Rule 403 because the district court ruled on motions and objections in which Smith specifically requested that the court weigh the probative value of the records against their prejudicial effect. The district court's mere failure to make a record of its Rule 403 weighing is not reversible error. *See United States v. Price*, 617 F.2d 455, 460 (7th Cir. 1979) (holding that a trial judge's failure to expressly state reasons in the balancing of probative value and unfair prejudice, although improper, did not warrant reversal, as the court of appeals would not presume wrong reasons when correct ones were apparent). The fact that the probative value of these records outweighs any prejudicial effect is apparent from the record.

## C.     Jury Instructions

Smith argues that the district court abused its discretion because it failed to instruct the jury that the defendants would be liable if the jury found that the defendants' negligence was one of multiple causes of Smith's amputation.  In this diversity case, Missouri law governs the substance of jury instructions while federal law governs whether the district court abused its discretion in refusing or admitting jury instructions.  *Crump v. Versa Prods., Inc.*, 400 F.3d 1104, 1107 (8th Cir. 2005).  District courts have "wide discretion" in drafting jury instructions.  *Omega Healthcare Investors, Inc. v. Lantis Enters., Inc.*, 256 F.3d 774, 776 (8th Cir. 2001).  "Our review is limited to whether the instructions, viewed on the whole, fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury . . . ."  *Id.* (internal quotation omitted).

The district court did not abuse its wide discretion regarding jury instructions.  In jury instruction number eleven, the district court provided the following instruction regarding the elements of a medical malpractice claim, including causation:

> Your verdict must be for plaintiff Dennis Smith . . . if you believe:
> First, Dr. Burdge failed to diagnose and treat an infection of Dennis Smith's right knee, and
> Second, that Dr. Burdge was thereby negligent, and
> Third, as a direct result of such negligence Dennis Smith sustained damage.

This instruction adequately represents the evidence and is an adequate summary of Missouri law.  *See Tompkins v. Kusama*, 822 S.W.2d 463, 464 (Mo. Ct. App. 1991) ("Three elements must be established to make a prima facie case of medical malpractice: (1) 'proof that an act or omission of the defendant failed to meet the

requisite medical standard of care,' (2) 'proof that the act or omission was performed negligently,' and (3) 'proof of a causal connection between the act or omission and the injury sustained by the plaintiff.'") (internal citation omitted).

Smith argues that because the defendants offered evidence at trial that Smith's preexisting condition was the sole cause of the amputation, the district court was required to give an instruction that the defendants would be liable even if their negligence was but one of multiple causes of Smith's amputation. *See Tillman v. Elrod*, 897 S.W.2d 116, 118 (Mo. Ct. App. 1995) ("Where concurrent or successive negligence combined together results in injury, the injured party may recover damages of either or both, and neither can use the defense that the prior occurrence or negligence of the other contributed to the injury."). Smith tendered a non-Missouri Approved Instruction ("MAI") on multiple causation which provided that the defendants had the burden of proving that Smith's preexisting knee problems were the sole cause of the amputation. The district court did not abuse its discretion in refusing to give that instruction because it misstates Missouri law, under which defendants do not bear the burden of disproving the elements of a negligence claim. *Birmingham v. Smith*, 420 S.W.2d 514, 517 (Mo. 1967).

Although an explicit instruction on multiple causation might have been permissible, Smith did not request the applicable instruction, MAI 19.01. *See* Missouri Supreme Court Rule 70.02(b) ("Whenever Missouri Approved Instructions contains an instruction applicable in a particular case . . . such instruction shall be given to the exclusion of any other instructions on the same subject."). Because Smith did not request MAI 19.01 and because the instructions, as given, fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury, we see no abuse of discretion.

-8-

**D.     Third Amended Complaint**

Smith argues that the district court abused its discretion in denying his motion for leave to file a third amended complaint.  *See Hannah v. City of Overland, Mo.*, 795 F.2d 1385, 1392 (8th Cir. 1986) (reviewing for abuse of discretion a ruling on a motion for leave to amend a complaint).  We disagree.

Smith filed his original complaint on April 9, 2002, and his first amended complaint on May 10, 2002.  The district court's Case Management Order, issued October 25, 2002, indicated that all motions to amend pleadings and to join parties were required to be filed by December 30, 2002.  Nevertheless, the court permitted Smith to file a second amended complaint on January 16, 2003.  Nine months later and six weeks after the amended deadline to complete discovery, on November 13, 2003, Smith filed a motion for leave to file a third amended complaint.  That motion sought to add new claims and to join additional parties regarding an alleged failure to prescribe physical therapy to Smith after the amputation.  The district court denied this motion, explaining that it was untimely because Smith knew about this physical therapy issue as early as May 2003 but did not file a motion to amend until almost six months later.

The district court did not abuse its discretion in denying Smith leave to file a third amended complaint.  Amendments should be freely granted when justice so requires, *see* Fed. R. Civ. P. 15(a), and the district court demonstrated its compliance with this rule when it permitted Smith to file his second amended complaint after the deadline for amendments.  However, it was not an abuse of discretion to deny Smith's motion to file a third amended complaint eleven months after the district court's amendment deadline because, for example, the parties would have needed additional time for discovery regarding the physical therapy issue.  *See Popp Telecom v. Am.*

*Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir. 2000) (finding no abuse of discretion in district court's denial of a pleading amendment that would have resulted in additional discovery and delayed the proceedings).

Smith also argues that the district court should have allowed this amendment because, after denying the motion, the district court granted a four-month continuance due to Dr. Burdge's ailing health. However, the district court's subsequent grant of a continuance for a reason wholly unrelated to the substance of the case has no bearing on whether the district court abused its discretion in its earlier decision to deny Smith's untimely request to amend his complaint.

### E.    Exclusion of Evidence Regarding Smith's Lower Back Problems

Smith argues that the district court abused its discretion in granting the defendants' motions to exclude any reference to or evidence of the lower back problems Smith suffered after his amputation. In his second amended complaint, Smith pled as part of his damages that his amputation has required him to place greater stress on his lower back with the likelihood of sustaining additional disability to his lower back. We do not need to decide whether the exclusion of evidence regarding his lower back was an abuse of discretion because any error would be harmless. Smith has the burden of proving that the inclusion of this evidence would have produced a different verdict. *Mems v. City of St. Paul*, 327 F.3d 771, 779 (8th Cir. 2003). He cannot meet this burden because evidence of his lower back problems pertains only to the extent of his damages and the jury ruled against him on the issue of liability. *See Kontz v. K-Mart Corp.*, 712 F.2d 1302, 1304 n.2 (8th Cir. 1983) (per curiam) (finding that the exclusion of evidence relevant to punitive damages was harmless where a jury found for the defendant on the question of liability).

**F.     Judgment as a Matter of Law**

Smith argues that the district court erred in granting judgment as a matter of law in favor of Tenet and SLU on the portion of count one that alleged that Tenet and SLU caused Smith's amputation by failing to comply with infection-control policies. "We review the grant or denial of judgment as a matter of law de novo." *First Union Nat'l Bank v. Benham*, 423 F.3d 855, 863 (8th Cir. 2005).

We hold that the district court properly granted judgment as a matter of law because Smith failed to offer expert medical testimony from which a reasonable juror could conclude that Tenet's and SLU's alleged failure to comply with infection-control policies caused Smith's amputation.  One of the elements of a medical malpractice claim is causation. *Tompkins v. Kasama*, 822 S.W.2d 463, 464 (Mo. Ct. App. 1991).  "When a party suffers a sophisticated injury, which requires surgical intervention or other highly scientific technique for diagnosis, proof of causation is not within a lay person's understanding and expert testimony is required." *Echard v. Barnes-Jewish Hosp.*, 98 S.W.3d 558, 566 (Mo. Ct. App. 2002).  Therefore, to prevail on count one, Smith needed to present expert medical testimony to establish that the failure to comply with infection-control policies caused Smith's alleged infection and that Smith's alleged infection caused Smith's amputation.  His failure to present such testimony entitled Tenet and SLU to judgment as a matter of law.

Smith argues that causation on count one can be proven without expert testimony because hospitals, unlike physicians, are held to only an ordinary care standard. *See, e.g.*, *Stacy v. Truman Med. Ctr.*, 836 S.W.2d 911, 922 (Mo. banc 1992) (holding a hospital to an ordinary care standard when a patient died in a fire started by another patient who was smoking a cigarette and using a flammable cup as an ash tray); *Poluski v. Richardson Transp.*, 877 S.W.2d 709, 713 (Mo. Ct. App. 1994)

(holding a hospital to an ordinary care standard when a patient was injured while being transported to another healthcare facility). However, the cases on which Smith relies are distinguishable from this case because they involve liability for injuries that are not related to the provision of medical care, *see, e.g.*, *M.W. v. Jewish Hosp. Ass'n of St. Louis*, 637 S.W.2d 74, 76 (Mo. Ct. App. 1982) ("Those cases where conduct involves nonmedical, administrative, ministerial or routine care require only a finding that the hospital breached the obligation of ordinary care."), or they involve the doctrine of *res ipsa loquitur*, *see, e.g.*, *Zumwalt v. Koreckij*, 24 S.W.3d 166, 168 (Mo. Ct. App. 2000). Smith's allegations that Tenet and SLU failed to abide by infection-control policies are directly related to the quality of Smith's medical care, and this case is not a candidate for *res ipsa loquitur* because amputations regularly occur without someone's negligence. *See, e.g.*, *State ex rel. GS Techs. Operating Co., Inc. v. Pub. Serv. Comm'n of Mo.*, 116 S.W.3d 680, 694 n.9 (Mo. Ct. App. 2003) (holding that, to apply the doctrine of *res ipsa loquitur*, the plaintiff must prove that "the incident resulting in injury is of the kind which ordinarily does not occur without someone's negligence"). Consequently, causation cannot be presumed and Smith was required to provide expert medical testimony sufficient to establish that Tenet and SLU caused Smith's amputation.

## G. Expert Witness Testimony Based on Previously Undisclosed Information

Smith argues that the district court abused its discretion in allowing two of the defendants' experts, Dr. Donald Brancato and Dr. Charles Mannis, to base their testimony on information they did not disclose in their pretrial reports. *See* Fed. R. Civ. P. 26(a)(2)(B), (e). We review the district court's rulings regarding expert witnesses' duty to disclose facts on which they base their testimony for an abuse of discretion. *Phil Crowley Steel Corp. v. Macomber, Inc.*, 601 F.2d 342, 344 (8th Cir. 1979).

Smith complains that Dr. Brancato relied on x-rays that he did not disclose in his pretrial report to support his conclusion at trial that Smith should have had his leg amputated many years prior to the surgical complications in 2001. We do not need to decide whether the district court abused its discretion in allowing this testimony because any error would be harmless. Rule 26(a)(2) "imposes an additional duty to disclose information regarding expert testimony sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." Fed. R. Civ. P. 26, advisory committee notes (1993 Amendments). While Dr. Brancato did not include his reliance on x-rays in his pretrial disclosure, he did discuss these x-rays during his deposition. Therefore, Smith was on notice that Dr. Brancato might rely on these x-rays during his trial testimony. A harmless violation of Rule 26 does not mandate exclusion of the evidence. *See* Fed. R. Civ. P. 37(c)(1).

Smith also complains that Dr. Mannis reviewed additional information after he submitted his pretrial report and gave his deposition. However, Smith does not allege that Dr. Mannis based his trial testimony on this new information. Accordingly, any error would be harmless and does not mandate exclusion of the evidence. *See* Fed. R. Civ. P. 37(c)(1).

**H.    Costs**

District courts may award costs to a prevailing party. Fed. R. Civ. P. 54(d). However, such costs must be set out in 28 U.S.C. § 1920 or some other statutory authorization. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 438 (1987). The district court ordered $27,515.25 taxed against Smith for the defendants' costs. Smith argues that the district court abused its discretion because taxing such an allegedly exorbitant amount will deter poor individuals from seeking redress. District courts have substantial discretion in awarding costs under Rule 54(d). *Zotos v.*

*Lindbergh Sch. Dist.*, 121 F.3d 356, 363 (8th Cir. 1997). We find no basis for reversing the district court's decision to impose costs in favor of the defendants.

Smith also argues that the district court abused its discretion by taxing him for depositions that the defendants did not use at trial and for the delivery costs of deposition transcripts. The district court did not abuse its discretion in awarding costs for depositions. "[E]ven if a deposition is not introduced at trial, a district court has discretion to award costs if the deposition was 'necessarily obtained for use in [a] case' and was not 'purely investigative.'" *Id.* (citation omitted). However, Smith should not have been taxed the delivery costs for these depositions. *See Cleveland v. North Am. Van Lines, Inc.*, 154 F.R.D. 37, 38 (N.D.N.Y. 1994) (finding deposition costs recoverable but associated delivery costs not recoverable). Section 1920 does not authorize taxing Smith for the defendants' postage and delivery expenses. *See Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996) (holding that postage expenses are "clearly nonrecoverable"); *Hollenbeck v. Falstaff Brewing Corp.*, 605 F. Supp. 421, 439 (E.D. Mo. 1985) (same).

We are unable to ascertain from the record the amount of delivery costs taxed to Smith. Therefore, we remand this case for the limited purpose of reducing the costs taxed to Smith by the amount of postage and delivery fees for depositions.

## III. CONCLUSION

For the reasons set forth above, we affirm the verdict but remand for a recalculation of the costs taxed to Smith.

_____